Good morning, Justice Emanuel. You have a question for Mr. Angel Castillo? Can I ask you a question? We have just been delivered two documents from your office, one of them asking that we hold the case in advance. But the declaration was signed on November the 8th, so obviously you've had this for quite some time. Why did you wait until this morning to deliver these two documents, the 28-J letter and this so-called request for holding the case in advance? Your Honor, the dating was a mistake because I did it this morning, November 18th, so I missed the one. It was done this morning, my fault. And when you say the case is pending in the Supreme Court, is that a cert petition or has cert been accepted? I actually discussed this case with opposing counsel. I intend to withdraw the motion because that was an error on my part. All right. It is not pending before the Supreme Court. I relied on a bulletin from her office that addressed two cases on the same page. The second case is pending. This one is not. So I do not. So basically we should throw that out? On the basis of a case pending before the Supreme Court. But I do want an opportunity to brief the issue a little bit more fully. Well, you had an opportunity. What issue would you want to brief more fully? Well, Your Honor, the issue was raised by the petitioner in the opening brief. It's in my 28-year letter. Right. Which is that the BIA applied the wrong standard in overturning the IJ's decision. I did cite to him Kaplan v. Attorney General. It's from the Third Circuit. But I think the Kaplan rationale applies to this case as well because it addresses the regulation passed by the BIA back in 2002. And there's been a source of a lot of litigation, but pretty much what the regulation says is that the BIA is not a fact-finding body and that once IJ makes findings of fact, the BIA cannot overturn it absent clear error. So in this case, I apologize for this because I didn't get involved in this case until last week. It was briefed by a different party. And when I got in the case, I requested a copy of his brief and the actual AR. I wasn't able to get that. And I went on Pacer. Pacer didn't contain online copies of all these documents. So the only time I even got a chance to look at the BIA's brief was two days ago when it was faxed to me by opposing counsel. After I received the BIA brief, I looked at the standard they applied. They don't articulate one at all. And so after I saw they didn't articulate any standard, I recognized the issue right away. And I did the 28-day letter to point out that when there's findings of fact, they cannot overturn it unless they find clear error. And if you look at the BIA decision for three pages, they don't talk about any standard at all. Well, just to make certain at least that I understand this, you are withdrawing your request that we hold the case in abeyance. You are asserting in your 28-day letter that there is, from your perspective, new authority from the Third Circuit, the reasoning of which substantiates or supports your position. Is that correct? Partly, Your Honor. And I want to clear this up a little bit more. The authority is not new. The case from the Third Circuit is new. But the authority for the BIA to articulate a standard is a very old one. It's been around this Court for years. The standard... Well, maybe we could just cut to the chase here. Yes. Where did you think the BIA went wrong in its actual decision in rejecting findings as opposed to taking the evidence and then making a determination based on the evidence? Well, the Attorney General passed a rule in 2002. It's in the 67 Federal Register, 54878-54890. It was passed on August 26, 2002. And I did cut it in a 28-day letter. What it basically says is that when the factual finding by the immigration judge, the BIA does not only... Okay. Can you want to listen to my question again? Sure. We're aware of the regulation. We're aware of the sequence. Where in the BIA decision do you believe that the BIA rejected factual findings as opposed to taking the evidence and making a determination of whether that evidence met certain criteria, such as the more likely than not or otherwise? Well, that is my main thrust of the argument, Your Honor. They cannot do that. Where? No, where? In the decision? Yeah, I'm looking at the decision. Oh, they don't articulate a standard at all. In other words, you'd have to presume they did not find clear error, because if they found clear error, they would have pointed out that there is clear error. No, but where did they go wrong in the decision? Point me in the decision where you think it went wrong. All they said here is as to the aggravated felonies, they make a determination. And then on the CAC claim, the BIA just says there's not sufficient evidence in the record. And that's a determination based on the evidence, not necessarily the rejection of the evidence. So I'm just trying to understand your argument. Well, my argument is that the BIA is prevented from determining that there is not enough evidence in the record. The BIA is allowed to decide that the idea was clearly erroneous in a factual finding. But a factual finding is distinct from a decision that has a legal ramification of a factual finding. But once the idea makes a factual finding, the BIA has to find the factual finding clearly erroneous. And what the Kaplan case says, and most of the cases that review this, you should say, is that the difficulty here is they're not necessarily rejecting findings. They're just saying that the evidence, as viewed by the BIA, is not sufficient with respect to torture. Maybe you ought to argue why that finding or that determination is wrong. Well, Your Honor, we also argue the determination itself is wrong. But, again, I'm sorry. Are you just – I think my colleague and I are struggling with the same issue. Are you now withdrawing your contention that the BIA illegally did its own fact-finding? Is that correct? Well, apparently, your colleague does not allow me to make the argument. Now, she has. I'm asking you to make the argument. I'm telling you not to keep repeating the same thing that's not answering the question. I'm merely saying I believe that is answering the question, because if a panel is not allowed to do factual findings, by the same token, it's not allowed to do factual findings. Counsel, stop, please. You have alleged that they have done factual findings. We have on our iPads, we have this document in front of us. Where did they do factual finding? Please point that out. Looking at Excerpt of Record 19, 20, and 21, which is the BIA decision. Well, the Board found that there was not enough evidence in the record.  But where did they do this illegal fact-finding? Please point to the language in the BIA's decision. Where are you referring to? On page 2. Page 2. Okay. Fourth paragraph. Okay. Starting with, we do not find sufficient. Evidence in the record. Correct. They concluded it's more likely than not that Respondent would be tortured for returning to Mexico. But they're reviewing the fact-finding that was done by the IJ, which is their function, is it not? It is not their function in this particular instance, Your Honor, respectfully, because the BIA does not have authority to review a fact-finding by inferior tribunal, unless that finding clearly erroneous. How could they make a determination that there were insufficient facts or it was clearly erroneous if they weren't reviewing the Facts Council? Because they overstepped their bound. This is what the Kaplan case says exactly. And that's what most cases that review this issue say exactly, that when the BIA does review all the facts itself, it exceeds authority. The BIA may review the conclusion of law de novo, but in a factual finding it has to find that it's clearly erroneous and they have to articulate it. But with respect, counsel, how can the BIA find that what was done below was clearly erroneous without reviewing the facts that were found by the BIA, I mean by the IJ? Well, Your Honor, I believe it's a matter of semantics. I mean, if an appellate court reviews the finding of a lower court and decides that it is clearly erroneous, the courts of appeal require them to articulate that. If they do not articulate a standard of the review, then there's a failure by the court itself to articulate on what standard it felt there was enough evidence. In other words, I've had several cases. See, I think you're just – I think your client might have a good case, but that you're not going down the right path. We haven't made any decision yet, but the difficulty is you keep sticking to this as opposed to, you know, there's no real fact findings by the immigration judge. The immigration judge lays out the evidence basically here. And then the immigration judge says, actually, it's more likely than not there would be torture because of the family and Guspieto. So there's just diametrically opposed conclusions from the facts between the BIA and the IJ, and the question is whether, based on those facts, there's substantial evidence or whether, in fact, that the BIA's conclusion is one that, you know, a reasonable person would not reach based on these facts. And you haven't really argued the facts here that put this person in danger. Well, you're fortunate that you have a good case notwithstanding your argument. Thank you, Your Honor. I will defer this time to the opposing counsel. All right. And I'll refer to you when I come back. Thank you. May it please the Court, Anna Nelson for Respondent Eric H. Holder. There are two issues in this case. First, whether the Board reasonably determined that Petitioner failed to meet the very high presumption that his drug trafficking conviction is a particularly serious crime. Counsel, I consider I have a whole lot of time. Let's say we agree with you about the drug conviction. There is the concept of deferral. And in this particular case, it seems to me that the record is just replete with evidence tying what's the name of this guy? Yeah, the one who's tied with the mob. I mean, he's done all kinds of things. There's allegations of killing a brother-in-law, of the wife, of tracking the children, threatening people with death, trying to run them down with a car. If we find, based upon what's in the record here, that there is, in fact, a real likelihood of torture and death on his part, the proper approach here would be to defer his removal, would it not? Deferral of removal would be? Yeah. It would be under CAT. Under CAT. And that's a deferral, not a withholding. Right. If you find that it is not on the aggravated. Not negligible. Right. We argue, though, there is evidence that the drug cartel would be after him, but there's also plenty of evidence, substantial evidence, that they are not. He, if he has claimed that he is afraid of the Mexican drug cartel, there's really no evidence that they directly have targeted him. There have been anonymous threats to his family, but they have never, they live in Tijuana and have never actually been harmed. Wait a minute. As I understand it, Castillo and his wife testified that Olivas, who's the guy with Marie Frank, who tried to run him over with a car, he's got a restraining order against him. He testified that he threatened to kill him. He testified that the cartel may know of his cooperation with the police. His wife and father-in-law testified that Olivas was involved with the cartel, that he killed her brother, the wife's brother. That's pretty heavy-duty stuff. I mean, we grant relief under CAT to people for a whole lot less than this, don't we? Right. Yes. As the board found, though, the evidence shows that it's generally speculation that this uncle is related to the drug cartel. Petitioner's wife's family believes that he is because he owns a lot of houses, has a lot of money. He's never actually mentioned. Of course, that's one of the reasons that he doesn't get his relief on his felony, is because he's basically carting the stuff across the border. So it seems like you can't have it both ways. In other words, you put a stake in his heart because he's helping out the cartel with the drug transaction, and then when you come over to the CAT, you say, well, we don't really know he's got a drug transaction. And that inconsistency is troubling. Yes. And it's his belief that the uncle is involved with the drug cartel, all which does limit the factors in the matter of Y.L. presumptiveness. But here for proving the CAT. I thought they did testify that he was involved. They are 131 and 144. Am I mistaken on that? The family believes that he is, but it's based, and the board found, based on the speculation, based on the facts. And also this 2003, it was basically a domestic dispute. There is an affidavit by Petitioner's wife's father kind of describing the incident. It's not really clear that it had anything to do with the drug cartel or anything. And since 2003, the uncle has not, has completely left Petitioner alone. He lives half a mile from Petitioner and his family. At his hearing, he said that he had even seen him, his immigration hearing. Well, the father-in-law filed a written affidavit in the state court alleging that this man is a powerful and dangerous drug dealer who wants to harm Castillo. And that was the basis for the restraining order. That's pretty direct, isn't it? That was for the restraining order, again. Which was granted. Right, in the state court. But it was also based on the family members testified. They were asked during their immigration proceedings, and it was based on facts like he has a lot of money, his brother. He has a brother who is allegedly in the drug cartel in Mexico. But before this court and before the board, the facts were that he hadn't, he had seen this uncle two weeks beforehand. The uncle didn't say anything to him. Basically since the restraining order happened, which expired in 2006, he hadn't had any problems with him. Well, you have the credibility and favor of the Petitioner here. And then you have direct testimony that the uncle is a member of the cartel. I'm not sure why you would then say that's speculative evidence, because you have direct testimony. I mean, what, you know, it's not like you get a membership. It's not like being a member of the union to be a member of the cartel. So what do they have to do, you know, bring a head on a platter? Or how do you, you know, they give credible testimony. I'm not sure what else they could do. Do you have any cases that suggest otherwise? Not off the top of my head. And the board had discussed, they were relying on, the testimony was credible, but essentially saying they believed that it was based on the drug cartel, based on these facts. And there really, there was no mention ever from the uncle or anything. Say that again. The uncle himself never has stated that he was a member of the cartel. Now, that's a little naive. You've been at the Department of Justice how long now? Five years. And do you usually have cartel members who aren't cooperating witnesses confessing that they're members of the cartel? I mean, you can't bring him in. Right. Well, in the record before this court, there's enough evidence that could go either way. And the standard is that it must compel the reversal, that this person would be more likely than not tortured if returned to Mexico. But, again, with respect, counsel, I'm looking at pages 4, 5, 6, and 7. I guess its date stamp would be 80 through 85 of the IJ's decision. It's just more and more and more and more information about the threats, about the connection to the cartel, what was done, the death threats, et cetera, et cetera. And I don't see anything to the contrary. I mean, yeah, I understand there's some hearsay evidence and that sort of thing, but where's the contrary evidence to what shows up, I guess it starts with date stamp 82. I don't know whether that's an administrative record or whether it's a date stamp or whatever it is. You've got page after page of these allegations, and I don't see where it's refuted later on here. Can you point me to something where any portion of the most serious allegations made before the IJ are refuted? At 215, I have noted here, and I think. Let me get more importantly to this. This is what the IJ says at 88. Respondent has met his burden of establishing by his specific, direct, and credible evidence that it is more likely than not that the respondent would be persecuted, tortured, and or killed by members of his wife's uncle's drug cartel if he returned to Mexico by virtue of his marriage to his wife and his membership in the social group of that family as discussed above. That's the IJ's conclusion. Or is it refuted? Well, and as your honors noted, the board has the right under the regulation, as of 8.1, to reweigh the evidence. I think their most compelling argument is that there really has been no connection or there's enough evidence that there isn't a connection. And I believe the record that is cited at 215 is that he lives half a mile from Petitioner. They see him regularly. Nothing has happened. Also that the What is the restraining order? In 2003. You're not supposed to go near them. That expired in 2006, but you're right. Also that the family has gotten anonymous threats in Mexico, but there's no sign that the family members have been harmed, even though the drug deal went down in 2002. Yeah, and allegedly something could have happened before. Are there any more questions? I think not. Thank you. Thank you. You used your rebuttal time already, so the case just argued. Castillo v. Holder is submitted. Thank both counsel for your argument this morning.
judges: Brewster, McKeown, Smith